**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| JORGE LUIS REYES, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09CV23–HEH |
| | ) | |
| LORETTA K. KELLY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**
**(Dismissing Claims II, V, and VI and Ordering Further Briefing)**

Jorge Luis Reyes, Sr. ("Petitioner"), a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions in the Circuit Court of Henrico County ("the Circuit Court") for murder and use of a firearm in the commission of that offense.

By Memorandum Opinion and Order entered on September 25, 2009, the Court denied Respondent's Motion to Dismiss and directed the parties to file further briefing. *Reyes v. Kelly*, No. 3:09cv23–HEH, 2009 WL 3109856, at *6 (E.D. Va. Sept. 25, 2009). Thereafter, Petitioner retained counsel. Respondent filed further briefing and renewed her request to deny the § 2254 Petition. Petitioner filed his opposition to the denial of the § 2254 Petition. At the request of the parties, the Court stayed any ruling on the § 2254 Petition while Petitioner pursued a petition for a writ of actual innocence in the Virginia courts. Petitioner represents that the proceedings on his state petition for a writ of actual innocence have concluded.

## I. PETITIONER'S CLAIM FOR FEDERAL HABEAS RELIEF

Petitioner contends that he is entitled to relief upon the following grounds:

Claim I — The Circuit Court erred in granting an instruction on flight.

Claim II — Petitioner was denied his federal and state constitutional rights because:
- A. The Circuit Court erred in denying Petitioner the right to present evidence; and,
- B. Petitioner was denied a jury of his peers.

Claim III — The Circuit Court erred in admitting evidence of Petitioner's prior handling of firearms.

Claim IV — The Circuit Court erred in admitting the state-of-mind declarations of the victim.

Claim V — The prosecutor engaged in misconduct during closing argument.

Claim VI — Petitioner was denied the effective assistance of counsel because:
- A. Counsel failed to challenge the credibility of the police witnesses;
- B. Counsel failed to obtain the presence of a key witness;
- C. Counsel failed to move for a continuance;
- D. Counsel failed to subpoena statements of witnesses made to the police;
- E. Counsel failed to object to references in the prosecutor's closing argument to evidence that was not presented at trial; and,
- F. Counsel failed to offer a proper instruction on involuntary intoxication.

Respondent asserts that Claims I, II.A, III, and IV are procedurally defaulted. Respondent contends that Petitioner's remaining claims lack merit. For the reasons that follow, Claims II, V, and VI will be defaulted.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

The requirement that defendants convicted in state court exhaust their state-court remedies as a prerequisite to federal habeas review "is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). The purpose of requiring exhaustion

is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two aspects. First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). The federal habeas statute provides that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (citing *Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162–64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Procedural default also occurs where the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[1] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010). Absent a showing of cause and prejudice or a fundamental miscarriage of justice (such as a petitioner's actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

**A. Claims I, III, and IV**

As this Court previously observed, Petitioner presented Claims I, II, and IV on direct appeal purely as state law questions. *Reyes v. Kelly*, No. 3:09CV23–HEH, 2009 WL 3109856, at *2 (E.D. Va. Sept. 25, 2009).[2] Hence, Petitioner did not fairly present the federal constitutional challenges of Claims I, III, and IV on direct appeal. *See Duncan*, 513 U.S. at 365–66.

---

[1] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (citing *Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

[2] A more detailed description of the procedural history of Petitioner's claim can be found in the Court's prior opinion.

Petitioner contends that he did exhaust the federal constitutional aspects of Claims I, III, and IV on state habeas because, at the conclusion of his state habeas petition, he stated: "The evidence is clear that the detention of Jorge Luis Reyes, Sr. is unlawful because of a myriad of fallacies, including, but not limited to, the deprivation of his fundamental right to Due Process." Memorandum Support State Habeas Petition at 36, *Reyes v. Warden, Sussex I State Prison*, No. 081267 (Va. filed June 16, 2008).

Proper exhaustion requires a petitioner to present his claims in accordance with the state's "chosen procedural scheme." *Mallory*, 27 F.3d at 995. As this Court previously observed, "Virginia's chosen procedural scheme requires prisoners seeking habeas relief to utilize a standard form prescribed by statute." *Reyes*, 2009 WL 3109856, at *2 (citing Va. Code Ann. § 8.01-655). On the standardized form, Petitioner represented that his state habeas claims pertaining to (1) the instruction on flight (§ 2254 Claim I), (2) the admission of evidence of Petitioner's prior handling of firearms (§ 2254 Claim III), and (3) the admission of the state of mind declarations of the victim (§ 2254 Claim IV) were the same state law claims that he had advanced on direct appeal. *Id.* at *3. "Understandably, the Supreme Court of Virginia rejected these claims on the ground that they had previously been decided on direct appeal." *Id.* "Permitting review of the federal constitutional aspects of Claims I, III, and IV, under the present circumstances, would inappropriately 'signal[] litigants that they may ignore state procedures and still expect the federal courts to hear [their] claims.'" *Id.* at *4 (alterations in original) (quoting *Mallory*, 27 F.3d at 996). Therefore, in his state habeas petition, Petitioner did not fairly present the federal constitutional aspects of Claims I, III, and IV.[3]

---

[3] Moreover, it is extremely doubtful that casting a stray, general reference to due process at the conclusion of a thirty-plus-page memorandum is sufficient to fairly present the substance

Petitioner next contends that he fairly presented the federal constitutional aspects of Claims I, III, and IV to the Supreme Court of Virginia because, during the proceedings on his state habeas petition, he made a passing reference to due process at the end of his Reply Brief to Respondent's Motion to Dismiss. Petitioner's Reply at 17, *Reyes v. Warden, Sussex I State Prison*, No. 081267 (Va. filed Sept. 4, 2008). Petitioner fails to demonstrate that, under Virginia's "chosen procedural scheme," a reference to due process in such a reply constitutes a proper method for raising a federal constitutional claim on state habeas. *Mallory*, 27 F.3d at 995. "Supreme Court of Virginia Rule 5:7 specifies the pleadings permitted in an original jurisdiction habeas corpus case: a verified petition and a responsive pleading. A memorandum of law may be filed *along with* either of these pleadings. Absent court authorization, no other documents may be filed." *Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007) (citing Va. Sup. Ct. R. 5:7 and Virginia cases interpreting that rule). Petitioner did not obtain authorization to file his Reply Brief to Respondent's Motion to Dismiss or additional documents in his state habeas proceedings. Thus, Petitioner did not fairly present the federal constitutional aspects of Claims I, III, and IV by his reference to the Constitution in his unauthorized filing in the Supreme Court of Virginia. *Id.*; *see Tate v. True*, 264 F. App'x 314, 320 (4th Cir. 2008). Accordingly, on state habeas, Petitioner failed to exhaust Claims I, III, and IV.

---

of the federal constitutional claim. "Presenting the substance of the claim requires that the claim be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Pethtel v. Ballard*, 617 F.3d 299, 306 (4th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 2873 (2011). Furthermore, "[w]hen the appeal is to a constitutional guarantee as broad as due process, it is incumbent upon a habeas petitioner to refer to the particular analysis developed in cases and not just to due process in general in order to present his claim." *Gray*, 99 F.3d at 162 (internal quotation marks omitted).

If Petitioner were to attempt to return to the Supreme Court of Virginia now and present Claims I, III, and IV, that Court would find the claims barred by section 8.01-654(B)(2) of the Virginia Code.[4] Section 8.01-654(B)(2) constitutes an independent and adequate state procedural rule. *See George v. Angelone*, 100 F.3d 353, 363-64 (4th Cir. 1996). Thus, Claims I, III, and IV are procedurally defaulted.

**B. Excuses for Default**

Petitioner has not asserted any cause that would excuse his default. Nevertheless, scattered throughout his *pro se* submissions Petitioner makes disjointed arguments as to his innocence. (*See, e.g.*, Notification Regarding Stay & Abeyance (Docket No. 39) 1.)[5] Given the different versions of events Petitioner provided to the police and the state proceedings which have occurred since the § 2254 Petition was filed, it is difficult to discern the theory and evidence on which Petitioner relies to prove his innocence. To the extent Petitioner wishes the Court to consider a claim of actual innocence, he must submit a brief, through counsel, within twenty-five

---

[4] That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing .... No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2011).

[5] On November 2, 2009, Petitioner, through counsel, withdrew Petitioner's prior requests to have evidence recovered at the crime scene tested for DNA. (Mem. Law Regarding Exhaustion of Claims & Procedural Default 11.) On November 24, 2010, the Court received directly from Petitioner notification that the state courts had denied his requests for testing, but asserts that the evidence "warrants further examination." (Notification Regarding Stay & Abeyance 1.) Neither Petitioner nor his counsel, however, have filed a proper motion requesting examination of any evidence. *See* E.D. Va. Loc. Civ. R. 7(F). Accordingly, Petitioner's request for an examination of evidence shall receive no further consideration.

(25) days of the date of entry hereof.[6] Such brief shall coherently explain his claim of actual innocence. Petitioner must attach to the brief any documents upon which he relies to support his claim of innocence. Within forty (40) days of the date of entry hereof, Respondent shall file her response to Petitioner's brief. Additionally, Respondent shall promptly arrange for the transfer of any records of Petitioner's recent state actual innocence proceedings to this Court and any pertinent exhibits from the Petitioner's criminal proceedings. Absent a sufficient showing of actual innocence, Claims I, III, and IV will be dismissed on the ground that they are procedurally defaulted.

### C. Claim II.A

In Claim II.A, Petitioner asserts that the Circuit Court violated "the Sixth[[7]] and Fourteenth[[8]] Amendments to the United States Constitution and by Article I, § 8 of the Virginia Constitution[[9]]" when he was "denied his right to present evidence material to his case." (§ 2254

---

[6] The Court's consideration of Petitioner's claim of actual innocence will be limited to the forthcoming brief from counsel for Petitioner. The Court will not cull through Petitioner's prior submissions to construct his claim of innocence.

[7] As pertinent to the claims Reyes raises in his § 2254 Petition, the Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

[8] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[9] "That in criminal prosecutions a man hath a right to . . . call for evidence in his favor . . . ." Va. Const. Art. I, § 8.

Pet. 8.) Initially, when Petitioner sought to press the constitutional aspects of this claim on direct appeal, a single judge of the Court of Appeals of Virginia refused to entertain them. *Reyes v. Commonwealth*, No. 1660-05-2, at 6–7 (Va. Ct. App. May 3, 2006). That court noted that, at trial, Petitioner "objected to the rulings on evidentiary grounds, not on the constitutional grounds he raises on appeal" and refused to review the claim pursuant to Virginia's contemporaneous objection rule, Virginia Supreme Court Rule 5A:18.[10] *Id.* at 7.

Thereafter, Petitioner requested review by a three-judge panel of the Court of Appeals of Virginia. In that opinion, the Court of Appeals of Virginia did not find that the constitutional argument raised in Claim II.A was barred by Virginia Supreme Court Rule 5A:18. *Reyes v. Commonwealth,* No. 1660-05-2, 2007 WL 654469, at *1–3 (Va. Ct. App. Mar. 6, 2007). Instead, that court concluded:

> [T]here is no "authority for the novel proposition that the right to present a defense encompasses the right to present any evidence the defense wishes, regardless of its admissibility under the [rules of evidence]." *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996). In this case, the evidence in question was hearsay evidence, and thus, we will address it as a non-constitutional claim of error.

*Id.* at *1 n.2 (second alteration in original). The Court of Appeals of Virginia went on to deny Petitioner relief on this claim. *Id.* at *2.

Furthermore, the record indicates that Petitioner did fairly present the constitutional aspects of parts of Claim II.A to the Circuit Court. In arguing for the admission of Petitioner's evidence that he fled Virginia because he feared for his life, counsel asserted:

> My client . . . . has a Constitutional right to compulsory process, to be able to have witnesses testify in his own behalf. And in this case, a contrary ruling by the Court

---

[10] The rule provides, in pertinent part, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Va. Sup. Ct. R. 5A:18 (West 2010).

> would interfere with his right to be able to present evidence that rebuts the Commonwealth's theory that he left town because he was a murder suspect. There are concrete statements that were made to people that we believe are admissible to prove that - rebut, as well as, prove that he did not leave town for -- because he was a suspect. So I would ask the Court to allow such statements through the witnesses called by the defense.

(Trial Tr. 647–48.) Respondent does not explain why the foregoing statement was not sufficient to fairly present the constitutional aspects of Claim II.A to the trial court. Moreover, given the different approaches taken by the Court of Appeals of Virginia[11] to the federal constitutional aspects of Claim II.A, it is not clear whether the Court of Appeals of Virginia actually applied Virginia Supreme Court Rule 5A:18 to bar Claim II.A. *See Coleman*, 501 U.S. at 735 ("In habeas, if the decision of the last state court to which the petitioner presented his federal claims . . . did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the [claim]."). In light of the fact that Reyes's constitutional claim is readily dismissed for lack of merit, *see infra* Part VI, the interests of judicial efficiency warrant proceeding to the merits of Claim II.A without further discussion of whether Claim II.A is unexhausted and procedurally defaulted. *See Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) (citing *Hardiman v. Reynolds*, 971 F.2d 500, 503 (10th Cir. 1992)).

## III. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's authority to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). The state court's "factual determinations are presumed to be correct

---

[11] Because the Supreme Court of Virginia summarily rejected Petitioner's petition for appeal, this Court looks to the decisions of the Court of Appeals of Virginia in addressing the issue of procedural default with respect to Claim II.A. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).

Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). The Supreme Court has emphasized "that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citations omitted). As discussed in detail, *infra* Part VIII, in light of the foregoing statutory structure, the Supreme Court of Virginia's disposition of Petitioner's claims and the record properly before that court are central to the resolution of whether Petitioner is entitled to federal habeas relief.

## IV. CLAIM II.B: ALLEGED ERROR IN JURY SELECTION

In Claim II.B, Petitioner contends he is entitled to relief because "Reyes, who is Latino, was denied Due Process and Equal Protection because the jury excluded his peers, and therefore, could have been racially biased." (§ 2254 Pet. 8.) "A showing of a substantial disparity between the proportion of eligible [Latinos] in the county's population and their proportion on juries

establishes a prima facie case of racial discrimination, if it is coupled with positive proof of racial discrimination or with a showing that the selection process left open an opportunity for discrimination." *Spratley v. Paderick*, 528 F.2d 733, 734 (4th Cir. 1975). Petitioner advances no evidence which indicates there was substantial underrepresentation of Latinos on his venire relative to the relevant population or that the Circuit Court's "system of selecting veniremen was manipulable or was otherwise racially biased."[12] *Truesdale v. Moore*, 142 F.3d 749, 756 (4th Cir. 1998). Accordingly, Reyes fails to establish an equal protection violation in the selection of his jury.[13] Claim II.B will be dismissed.

## V. SUMMARY OF THE EVIDENCE AT TRIAL

The Court of Appeals of Virginia aptly summarized the evidence as follows:

> On April 22, 2004 at approximately 1:00 a.m., Henrico County Police Officers Mark Domnick and Mike Taylor were in a vehicle at the parking lot of a restaurant at Laburnum Avenue and Meadowbridge Road. The officers saw a man in a white SUV blowing his horn and screaming as he traversed the Richmond

[12] In his § 2254 Petition, Petitioner does not offer any additional facts to support this claim. Counsel for Petitioner has not offered any facts to support this claim in response to Respondent's assertion that Claim II.B lacks merit and should be dismissed.

[13] To the extent Petitioner seeks to advance a Sixth Amendment violation, his claim is also deficient. The Supreme Court has explained that to establish a prima facie violation of the Sixth Amendment a defendant must show:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Berghuis v. Smith*, 130 S. Ct. 1382, 1388 (2010) (internal quotation marks omitted). Petitioner has not advanced any facts to satisfy the second and third elements for such a claim. Contrary to Petitioner's suggestion, he does not satisfy his burden simply by demonstrating that his petit jury did not contain Latinos. *See United States v. Espinoza*, 641 F.2d 153, 168 (4th Cir. 1981).

Henrico Turnpike into the parking lot. The man, subsequently identified as appellant, continued to scream and wave his arms after he stopped near the officers.

Domnick approached appellant's vehicle, reached in, and pulled the keys from the ignition. As he did so, he saw the body of Ruth Harris on the floorboard of the front passenger seat. Police checked her vital signs and discovered Harris was dead. Officers Taylor and Wagoner pulled appellant from the vehicle, and Domnick directed the other officers to handcuff appellant and to seat him on the curb. Appellant was distraught, and was also intoxicated. One officer testified, "His eyes were glassy and watery, speech slurred, hard to understand, just a real heavy odor of alcohol coming from his person," and that as a result it was difficult to understand what appellant was saying.

Appellant kept repeating certain phrases, such as "they shot her, they shot her," and repeated terms of endearment, such as "my baby." Appellant eventually claimed a man named "Buddy" had shot Harris. Appellant told Taylor repeatedly that someone had shot his girlfriend and that "somebody had gotten out of the car and shot at them while he was still sitting in the vehicle." Taylor acknowledged that appellant had indicated there was more than one individual involved.

At approximately 1:13 a.m., Henrico Police Officer Jeff Ensor arrived. Ensor began a crime scene log and an incident crime report by questioning appellant. Appellant repeated his statement that a man named Buddy had shot Harris. Appellant stated he contacted Buddy by driving around the area, and found him on Second Avenue. He agreed to give Buddy a ride. While in the car, Buddy brandished a firearm, exited the car, and started shooting into the vehicle. When appellant spoke, he did not mention a second suspect to Ensor. Ensor could not complete a physical description form for Buddy, because appellant, though conscious, suddenly stopped responding to questions.

Investigator Lowrey also questioned appellant. Appellant told Lowrey he was with Harris at his home on Second Avenue, and decided to leave and get dinner. While the two were driving, they saw Buddy. Appellant asked Buddy if Buddy had any drugs. Buddy did not, but asked appellant to give him and his companion a ride. Appellant agreed, and Buddy and the companion entered his car. Buddy sat behind appellant, who was driving. The companion sat behind Harris. Appellant drove by the location where he normally dropped off Buddy, so he attempted a U-turn. At that point, Harris yelled, "He's got a gun." Appellant turned and saw a small semi-automatic in Buddy's hand. Buddy and Harris struggled for the gun while the vehicle was moving. A round went off, and then Buddy jumped out of the car and shot from outside the vehicle.

Appellant admitted that he had been home all afternoon drinking, smoking marijuana and crack, and having sex.

At the hospital, a forensic nurse photographed red marks on appellant's upper back and shoulder, and abrasions on his face, hands, right wrist, and right elbow. While police were at the hospital, Sheila Harris-Minor arrived and introduced herself as appellant's fiancée. The vehicle appellant was driving was registered in her name.

The following evening, Officers Charles Hanna and William Kuecker met with appellant. They drove to the location where appellant stated Harris had been shot in order to look for evidence. None was found. Specifically, they failed to locate glass from the windows that appellant claimed had been shattered in the gunfire. Later, when the officers interviewed appellant at the police station, he told the officers he previously owned two guns, but had sold them.

The following Saturday, appellant introduced the officers to Nayesha Blount, a woman he believed was acquainted with Buddy. She pointed out certain areas where Buddy might be located. However, she identified the man as "Barry," and from that point, appellant referred to him as Barry as well.

Hanna had arranged to meet with appellant on April 29, 2004, but when they arrived at appellant's hotel he was no longer registered. Hanna located appellant in Richmond, where Hanna observed him with Harris-Minor. Hanna followed appellant to I-95, at which point Hanna asked Virginia State Police to stop appellant. State Trooper Fred Boyd stopped appellant for failure to stop at a weigh station. Appellant told the officer he put everything in his truck to move to Florida, where he had friends.

On or about May 5, 2004, appellant approached an acquaintance, Edward Kearney, and offered him $200 as well as a Cadillac to drive the truck out of town. Initially, appellant asked Kearney to take it to Georgia, but then said he wanted to go to Florida. On or about the same day, Iretta King went to her daughter's house where she discovered appellant, her daughter, and another man loading her daughter's furniture onto a dump truck. She asked appellant what they were doing. He told her he was going to Florida to help her daughter find a job on a boat.

The next day appellant met Kearney late in the morning, and the two began driving separate vehicles south on I-95. The North Carolina Police stopped Kearney in Lumberton, North Carolina. The officer asked whether Kearney had appellant's cell phone number. They contacted appellant and told him his dump truck had been impounded. Appellant then began to return to Virginia, where police stopped him seven miles from the border.

According to Bette Douglas, a friend of Harris's, Harris arrived at Douglas's residence in the early morning two days prior to her death. Douglas stated that Harris was upset and had a black eye when she arrived. Upon her arrival, the two chatted, and Harris went to sleep on the sofa. Douglas claimed Harris told her "she was scared of [appellant]." Later, appellant came to Douglas's home, and Harris left with him willingly. There was nothing remarkable about appellant's demeanor.

Harris's sister, Ada Anderson, testified that Harris had stayed with her for three weeks approximately one month prior to her death. According to Anderson, she did so "to get away from appellant." While there, Harris told her sister "she was afraid of [appellant], and she wanted to get away from him" and that at times appellant would act weirdly. In the evening before the murder while Harris was at work, she told co-worker Samantha Wright that "she was ready to get out of the relationship. She was scared."

After leaving work, Harris went to the home of her daughter, Detra Johnson, arriving at 9:15 p.m. Harris was anxious to return appellant's car because "he had

> been acting like crazy about his car, her using his car." As Johnson spoke with her mother, she saw her mother had neither a black eye nor a contusion on her left cheek.
>
> After leaving her daughter's house, Harris went to appellant's room. According to appellant, while there, they argued over her smoking a marijuana cigarette and the fact Harris believed appellant had been sleeping with another woman. Appellant became upset, knocked a joint out of her mouth, and left to calm down. When he returned, appellant heard Harris speaking to neighbor Debbie Allen about their domestic difficulties.
>
> Allen testified Harris awoke her while she was watching a television show between 12:30 and 1:00 a.m. Allen asked her, "Why don't you leave him," to which Harris responded, "He won't leave me." At that point, appellant yelled upstairs, "Don't nobody up here pay your bills; bring your MF on downstairs." Harris then went downstairs.[[14]]
>
> Harris died of a gunshot wound to the back of her head from a .380 caliber bullet. Based on the lack of stippling, the presence of heat artifact, and the gunshot powder in the wound, the forensic examiner concluded the gunshot was made from close range. There were no defensive wounds on her hands or arms, though the absence of such wounds would not negate the possibility of a struggle just prior to death.
>
> The Commonwealth introduced testimony from three witnesses regarding appellant's ownership of firearms. Marvin Green testified that he saw appellant with a gun in the weeks prior to the homicide, which may have been either a .38 caliber or a nine-millimeter. Barry Poindexter also saw appellant with a firearm shortly before the homicide, but could testify only that the gun was "medium sized." David Green testified that while parked at the victim's home shortly before the homicide he saw a man, who may have been appellant, take a handgun from his truck, put it in his pocket, and walk into the residence.
>
> No fingernail scrapings were extracted from Harris's hands for DNA testing. Her toxicology report showed a blood alcohol content of .21%. Harris also had a contusion on her face, a contusion on the left cheek, and bruising around the right eye. The injuries were caused within one or two days prior to death, and it was possible they were caused just prior to her death.

*Reyes v. Commonwealth*, No. 1660-05-2, 1-5 (Va. Ct. App. May 3, 2006) (first and second alteration in original). The factual findings by the Court of Appeals of Virginia are binding on this Court absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

---

[14] Within a half hour of these events, Petitioner drove into a restaurant parking lot with Harris's dead body in the car, telling his story that Harris had been shot by a drug dealer named Buddy.

## VI. CLAIM II.A: ALLEGED UNCONSTITUTIONAL EXCLUSION OF EVIDENCE

In Claim II.A, Reyes contends that he was denied his Sixth Amendment right "to present evidence on his behalf and to rebut the Commonwealth's case, particularly its theory of flight." (Pet'r's Mem. Regarding Exhaustion of Claims & Procedural Default (Dk. No. 23) 4.) "Reyes sought to introduce state of mind declarations which indicated that he was leaving the Commonwealth because he was in fear of his life because people had been shooting at him." (*Id.* at 6.) Reyes contends that such "evidence would have directly rebutted the Commonwealth's theory that [Petitioner] fled to 'avoid detection.'" (*Id.*) Additionally, Reyes asserts that the Circuit Court "erred in finding that there was insufficient evidence to present the theory of robbery to the jury." (*Id.* at 9.)

To establish a Sixth Amendment violation, a defendant must demonstrate that he was deprived of the opportunity to present a witness who would have provided testimony that was "[(1)]material and [(2)] favorable to his defense." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982). Thirdly, the defendant must demonstrate that the limitation on the admission of that challenged evidence was arbitrary or disproportionate to any legitimate evidentiary and procedural purpose. *See Rock v. Arkansas*, 483 U.S. 44, 56 (1987). In this regard, the Supreme Court has observed, "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *United States v. Scheffer*, 523 U.S. 303, 309 (1998) (citations omitted).

It is appropriate first to address whether, under the third prong, the evidence was properly excluded. *See Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003).

> In evaluating claims of violation of the right to present a complete defense, the Supreme Court has found the Constitution to be principally (but not always) concerned with state evidentiary rules leading to the "blanket exclusion," [*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)], of categories of evidence when their application is "'arbitrary' or 'disproportionate to the purposes the [rules] are designed to serve.'"

*Id.* at 60 (second alteration in original) (quoting *Scheffer*, 523 U.S. at 308). As reflected below, rather than involving the mechanical application of a rule demanding a blanket exclusion of a particular type of evidence, the challenged rulings are the type of "'ordinary evidentiary rulings by state trial courts' concerning the admissibility of evidence, upon which the [Supreme] Court is 'traditional[ly] reluctan[t] to impose constitutional constraints.'" *Id.* (second and third alterations in original) (quoting *Crane*, 476 U.S. at 689).

**A. Hearsay Evidence Regarding Petitioner's Flight**

The Court of Appeals of Virginia aptly summarized the Circuit Court's ruling on Petitioner's attempt to introduce through hearsay the events that allegedly led him to fear for his life and decide to flee Virginia:

> [T]he trial court, in ruling on the objection to the testimony, stated that Reyes failed to satisfy "the aspect of . . . falsification or . . . contrivance for the state of mind exception." In other words, the trial court found Reyes had a motive to lie about his reason for leaving the Commonwealth.
>
> The record shows that Reyes had been interviewed several times by law enforcement and that the investigation failed to produce any evidence supporting Reyes' version of the crime, or to locate the alleged shooter, Buddy. And, the police caught Reyes attempting to leave the jurisdiction without notifying the police of his "relocation." Moreover, Reyes took significant steps to leave the Commonwealth unnoticed. Specifically, he painted his dump truck a different color, and paid someone else to drive his truck and his belongings to Florida.
>
> Because there were sufficient facts to support the trial court's factual conclusion that the evidence showed an "obvious indication of fabrication or contrivance," we cannot say that the trial court erred in finding that the testimony did not meet all of the prerequisites for admitting the testimony under the state of mind exception, and therefore refusing to admit it.

*Reyes v. Commonwealth*, No. 1660-05-2, 2007 WL 654469, at *1–2 (Va. Ct. App. Mar. 6, 2007) (footnote and citation omitted; omissions in original). Petitioner does not enjoy a constitutional right to present hearsay testimony that bears an "obvious indication of fabrication or contrivance." *Id.* at *2 (internal quotation marks omitted); *United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011) (citations omitted); *United States v. Cianci*, 378 F.3d 71, 106–07 (1st Cir. 2004). Accordingly, this aspect of Claim II.A will be dismissed.

### B. Exclusion of Evidence Pertaining to Reyes's Theory that the Murder Was Part of a Foiled Robbery

Petitioner contends that the Constitution required that the Circuit Court permit him to introduce evidence to support his theory that the murder of Harris was part of a robbery, "[n]otwithstanding the fact that no actual demands for money were made of Reyes by Buddy." (Pet'r's Mem. Regarding Exhaustion of Claims & Procedural Default 9.) Petitioner insists that he should have been allowed to present evidence showing that he wore expensive jewelry and "was known to flash his money and carry large amounts of cash" to support the inference that a third party had a motive to rob him. (*Id.*)

The Court of Appeals of Virginia summarized the record regarding Petitioner's attempt to present the above described evidence and the Circuit Court's conclusion that such evidence was not relevant:

> The Commonwealth objected, stating that the testimony was "not relevant to whether or not there's a murder committed." Reyes argued that the testimony was "relevant because [Reyes] told the police that people tried to rob him . . . and [the witness] can say how he was perceived by the public as having a lot of money and putting money out." Moreover, Reyes claimed the evidence "corroborate[d] [Reyes'] statements."

> However, the trial court sustained the objection, noting that "[Officer] Lowery was questioned and there was no demand for dollars, no attempted robbery." In fact, Officer Lowery stated the following:
>
> > I did ask [Reyes] why Buddy would pull a gun on him; and you know, I said was there a mention of a robbery? Did he demand money? Was there any indication that that was what Buddy wanted with him? You know, why was Buddy pulling a gun on him? And [Reyes] said no; there were no demands as far as robbery.
>
> In essence, the trial court found that there was no evidence supporting the inference that Reyes was the victim of an attempted robbery and, thus, testimony amounting to mere speculation that a different motive might have obtained, was irrelevant. Because the record supports the trial court's ruling, we cannot say that the trial court abused its discretion in refusing to admit testimony regarding Reyes' money and jewelry.

*Reyes*, 2007 WL 654469, at *2 (alterations in original). As the Court of Appeals of Virginia observed, the right to present a defense does not "encompass[ ] the right to present any evidence the defense wishes, regardless of its admissibility." *Id.* at *1 n.2 (quoting *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996)). The Circuit Court acted within constitutional bounds in precluding Petitioner from introducing evidence he sought to introduce here. *See Lancaster*, 96 F.3d at 744 (rejecting defendant's challenge to trial court's exclusion of irrelevant evidence). Accordingly, Claim II.A will be dismissed.

## VII. ALLEGED PROSECUTORIAL MISCONDUCT

In Claim V, Petitioner contends that the prosecutor engaged in misconduct. First, Petitioner complains that "[d]uring the closing argument, the prosecutor repeatedly attacked Mr. Reyes' reputation, by stating that Mr. Reyes left to go to Florida with Yasheva, not R. Harris, and not 'Brown Eyes'." (Mem. Supp. § 2254 Pet. 31.) Petitioner further complains that the references to traffic stops during his flight to Florida were irrelevant and improper. (*Id.* at 33.) Such comments were not an improper attack on Petitioner's reputation. Rather, they reflected a proper comment by the prosecutor on the evidence and Petitioner's apparent attempt to flee to

Florida with a woman who was not his fiancée. The fact that Petitioner would discard his alleged fiancée and other girlfriends supported the prosecution's theory that Petitioner was making a calculated effort to avoid detection in departing the state.[15]

Petitioner complains that the prosecutor engaged in misconduct by referencing testimony Petitioner characterizes as hearsay. Given that the testimony had not been excluded during the trial, Petitioner fails to demonstrate that the prosecutor engaged in misconduct by referencing it in her closing argument.

Petitioner also suggests that Ms. "Blount[ ] was threatened with imminent arrest (due to her apparently having an outstanding warrant), if she appeared for trial." (Mem. Supp. § 2254 Pet. 32–33.) Petitioner bases this suggestion on the reports of a private investigator he attached to his Memorandum in Support of his § 2254 Petition. (Mem. Supp. § 2254 Pet. Ex. A.) The referenced reports, however, do not reflect that the police were threatening to arrest Ms. Blount in order to persuade her not to testify. Rather, the private investigator reports, "[Ms. Blount] wants to get away, but she doesn't want to testify for the prosecution nor Jorge. I attempted to persuade [Ms. Blount] not to run, and just tell the truth. She believes the police are looking for her now. She is moving around in an attempt to avoid them." (*Id.* Ex. A March 29, 2005 Report at 2.) Contrary to Petitioner's assertion, the reports indicate that the police were attempting to secure Ms. Blount's attendance at trial. Petitioner fails to demonstrate the prosecution engaged in misconduct. Accordingly, Claim V will be dismissed.

---

[15] Petitioner also complains that "[r]emarks were made to emphasize the fact that Reyes had elected not testify at his trial." (Mem. Supp. § 2254 Pet. 31.) Petitioner, however, does not identify, as he must, the allegedly offensive comment. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted; alteration in original)). The Court is neither obliged nor inclined to scour the record to identify possible offending comments.

## VIII. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

When he pressed some of these claims in his state habeas petition, Petitioner often offered little factual support for his legal claims and the Supreme Court of Virginia dispensed with the claims for that reason. In his § 2254 Petition, Reyes has expanded the factual support for his ineffective assistance of counsel claims. The requirement of exhaustion and the limits on federal habeas relief embodied in 28 U.S.C. § 2254(d) precludes such a practice. *See Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court recently observed:

> Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced

> in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011). Relatedly, with respect to § 2254(d), "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* Because Petitioner has not demonstrated that he was not at fault for failing to properly present his new facts to Virginia courts in the first instance, the Court will address Petitioner's claims in the factual posture in which they were presented to the Supreme Court of Virginia in his state petition for a writ of habeas corpus.[16] *Id.* at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court.").

### A. Claim VI.A: The Police Witnesses

In Claim VI.A, Petitioner contends that counsel failed to challenge the credibility of the police witnesses. On state habeas, the Supreme Court of Virginia accurately observed that "Petitioner fails to specify how he contends counsel should have challenged the 'police witnesses' and fails to identify the 'basis objection' he contends counsel should have raised." *Reyes v. Warden, Sussex I State Prison*, No. 081267, at 2 (Va. Dec. 4, 2008) ("State Habeas Op."). Therefore, the Supreme Court of Virginia concluded Petitioner had failed to demonstrate

[16] In this regard, the Court notes that Petitioner submitted two replies to Respondent's motion to dismiss in the Supreme Court of Virginia. Pet'r's Reply Br., Pet'r's Additional Reply, *Reyes v. Warden, Sussex I State Prison*, No. 081267 (Va. filed Sept. 4, 2008 and Sept. 15, 2008). Such documents were not authorized under the Supreme Court of Virginia's rules for original jurisdiction habeas proceedings and there is no indication that Petitioner obtained leave to file such documents. *See Strong v. Johnson*, 495 F.3d 134, 137 (4th Cir. 2007) (citing Va. Sup. Ct. R. 5:7 and Virginia cases interpreting that rule.)

deficiency or prejudice. *Id.* Such a decision was eminently reasonable. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement."); *United States v. DePuew*, 889 F.2d 791, 793 (8th Cir. 1989) (observing that general arguments cannot satisfy the specificity required by *Strickland*). Accordingly, Claim VI.A will be dismissed.

**B. Claims VI.B and VI.D: Nayesha Blount**[17]

Next, in Claim VI(B), Petitioner complains that counsel was deficient for failing to secure the attendance of a key witness, Nayesha Blount. Relatedly, in Claim VI.D, Petitioner faults counsel for failing to subpoena "the police and detectives' reports of statements made by" Ms. Blount. (Mem. Supp. § 2254 Pet. 37.) The Supreme Court of Virginia concluded that Petitioner had demonstrated neither deficiency nor prejudice with respect to Claims VI.B and VI.D. Specifically, with respect to Claim VI.B, the Supreme Court of Virginia noted,

> Petitioner has failed to provide an affidavit from Ms. Blount to demonstrate how she would have testified had counsel secured her presence at trial. Petitioner also fails to demonstrate that counsel would have been able to locate Ms. Blount as he concedes in his petition that Ms. Blount went into hiding and was never found.

State Habeas Op. 3. "Petitioner fails to . . . articulate what additional steps counsel should have taken to locate her after she went into hiding." *Id.* Similarly, with respect to Claim VI.D, the Supreme Court of Virginia again noted that "Petitioner fails to proffer the statements that Ms. Blount allegedly made to the police and petitioner fails to demonstrate that the statements would have been discoverable." *Id.* at 5.

---

[17] The Court employs the spelling for Ms. Blount's first name that is found in the opinion of the Court of Appeals of Virginia.

Complaints that counsel failed to obtain witnesses or conduct an adequate investigation "do[ ] not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (citing *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990)). Petitioner did not make such a proper proffer in conjunction with these claims before the Supreme Court of Virginia. Thus, the Supreme Court of Virginia's rejection of Claims VI.B and VI.D was reasonable. Accordingly, Claims VI.B and VI.D will be dismissed.

**C. Claim VI.C: DNA Evidence**

The Supreme Court of Virginia also rejected Claim VI.C because Petitioner failed to demonstrate that the omitted evidence would have aided the defense. In that claim, Petitioner asserted that counsel should have moved for a continuance because "[a]dditional time was needed to obtain results of D.N.A. found on the victim's hands and fingernails and 12 other pieces of evidence collected at the crime scene." Mem. Supp. State Habeas 33, *Reyes v. Warden, Sussex I State Prison*, No. 081267 (Va. filed June 16, 2008). In concluding that Petitioner had not demonstrated deficiency or prejudice, the Supreme Court of Virginia noted that:

> Dr. William Gormley, Chief Medical Examiner for the Commonwealth of Virginia, testified that he examined the victim's hands and did not find any gunshot residue or injuries, including defensive wounds. Petitioner fails to provide the final results of any DNA that was taken from the victim's hands and fingernails, fails to identify the other pieces of evidence that petitioner contends were collected and should have been analyzed, and fails to explain how the results would have been beneficial to his defense.

State Habeas Op. at 4. In light of the record before it, the Supreme Court of Virginia's rejection of this claim was reasonable. Accordingly, Claim VI.C will be dismissed.

**D. Claim VI.E: Closing Argument**

In Claim VI.E, Petitioner contends that counsel failed to object during closing argument to the prosecutor's reference to evidence not presented at trial. Specifically, Petitioner complains about the references to Ms. Blount's statements and Petitioner's comments while riding around in the police car looking for the person Petitioner alleged had shot Harris. The Supreme Court of Virginia concluded that "[t]he record, including the trial transcript, demonstrates that the prosecutor's comments were reasonably based on the evidence and, consequently, counsel had no basis to object to the prosecutor's closing argument." State Habeas Op. 6. Such a decision was eminently reasonable. Accordingly, Claim VI.E will be dismissed.

**E. Involuntary Intoxication Instruction**

In Claim VI.F, Petitioner complains the counsel failed to offer an instruction on voluntary intoxication as it related to Petitioner's specific intent. In rejecting this claim, the Supreme Court of Virginia stated that Petitioner

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland.* The record, including the trial transcript, demonstrates that presenting a jury instruction concerning intoxication was not consistent with petitioner's theory of defense, that petitioner was not the perpetrator, and would only have strengthened the prosecution's theory that petitioner was the assailant. Moreover, petitioner has failed to provide the instruction he contends counsel should have proffered. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

State Habeas Op. 6–7. Petitioner fails to demonstrate that such a conclusion was unreasonable. *See Gonzalez v. Estelle*, No. 88-15260, 1991 WL 17449, at *4 (9th Cir. Feb. 15, 1991). Accordingly, Claim VI.F will be dismissed.

## IX. CONCLUSION

Claims II, V, and VI will be dismissed. The parties will be directed to submit further briefing on Petitioner's claim of actual innocence.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Sept. 20, 2011
Richmond, Virginia